616 P.2d 440

**Angelina TARANGO and Santiago Tarango, Plaintiffs-Appellants,**

v.

**Raul PASTRANA, Javier Meneses, J. Rolon, and Providence Memorial Hospital, Defendants-Appellees.**

No. 4441.

Court of Appeals of New Mexico.

Aug. 5, 1980.

Tandy L. Hunt, Hunt, Shamas & Currier, Roswell, for plaintiffs-appellants.

K. Gill Shaffer, Deborah S. Davis, Shaffer, Butt, Thornton & Baehr, P. C., Albuquerque, for Pastrana, Meneses and Rolon.

William J. Mounce, Grambling, Mounce, Sims, Galatzan & Harris, El Paso, Tex., for Providence Memorial Hosp.

OPINION

WOOD, Chief Judge.

Does New Mexico have personal jurisdiction over the defendants? This question involves our long-arm statute, the transaction of business, the commission of a tortious act, and due process. The trial court ruled there was a lack of jurisdiction; plaintiffs appeal.

According to the complaint, the three individual defendants performed a tubal ligation upon Angelina, and this surgery was performed at the Hospital. According to the complaint, the surgery was improperly performed because subsequent thereto Angelina became pregnant and gave birth to a child. Angelina, and her husband Santiago, sought damages which included the "reasonable economic cost of raising a child * * *." We are not concerned with plaintiffs' theories of liability.

The Hospital moved to dismiss, asserting that it is a non-profit community hospital, that it is incorporated under Texas law, that it has only one facility which is located in El Paso, Texas, that it "in no way operates or does business in New Mexico or any other state." Dismissal was sought on the basis that the Hospital "was not served anywhere within the territorial limits of the State of New Mexico * * *."

The individual defendants moved to dismiss, asserting that they were not residents of New Mexico, that they transact no business in New Mexico, and that their only contact with plaintiffs was in El Paso, Texas. Dismissal was sought on the basis that they were not served with process within the boundaries of New Mexico.

The motions to dismiss were heard on the basis of affidavits of the parties and answers to interrogatories. The trial court

found that plaintiffs are residents of New Mexico and defendants knew this; that defendants are residents of Texas; that the Hospital operates only in El Paso, Texas; that the individual defendants are medical doctors who practice only in El Paso, Texas; that after the tubal ligation, Angelina returned to her home in Hidalgo County, New Mexico and subsequently became pregnant and bore a child.

There is no claim that any of the defendants were served within the territorial limits of New Mexico. Plaintiffs claim New Mexico has personal jurisdiction over defendants under New Mexico's long-arm statute. Section 38–1–16, N.M.S.A.1978 provides that a person who does any of the enumerated acts submits himself

> to the jurisdiction of the courts of this state as to any cause of action arising from:
>
> (1) the transaction of any business within this state;
>
>  \*   \*   \*   \*   \*   \*
>
> (3) the commission of a tortious act within this state. \* \* \*

Plaintiffs contend the defendants were doing business in New Mexico. This claim is based on the trial court's finding that defendants sent statements for payment of services rendered. Those statements were received by plaintiffs in New Mexico. The trial court ruled that the sending of the statements was insufficient. We agree.

Plaintiffs also contend that defendants committed a tortious act in New Mexico. Their theory is that even though any wrongful act on the part of defendants may have occurred in Texas, a tort is not complete until there is injury. See *Peralta v. Martinez*, 90 N.M. 391, 564 P.2d 194 (Ct. App.1977). Plaintiffs assert there was no injury until Angelina became pregnant. Inasmuch as Angelina became pregnant in New Mexico, plaintiffs assert the tortious act occurred in New Mexico. This view, of the place of commission of a tortious act, has been adopted in Illinois in connection with that state's long-arm statute. *Gray v. American Radiator & Standard Sanitary Corp.*, 22 Ill.2d 432, 176 N.E.2d 761 (1961);

see *Honeywell, Inc. v. Metz Apparatewerke*, 509 F.2d 1137 (7th Cir. 1975). New Mexico's long-arm statute was adopted from Illinois and the interpretation of the Illinois statute by Illinois courts, although not binding, is persuasive. *Hunter–Hayes Elevator Co. v. Petroleum Club Inn Co.*, 77 N.M. 92, 419 P.2d 465 (1966). The trial court ruled that even if a tortious act was committed in New Mexico, it was insufficient. Again, we agree.

The question of personal jurisdiction over out-of-state residents involves more than a technical "transaction of any business" or the technical "commission of a tortious act" within New Mexico. The meaning of those terms, in our statute, is to be equated with the minimum contacts sufficient to satisfy due process. *Telephonic, Inc. v. Rosenblum*, 88 N.M. 532, 543 P.2d 825 (1975). Both *Gray*, supra, and *Honeywell*, supra, discussed the "quantum of contact sufficient to warrant jurisdiction."

*Diamond A Cattle Company v. Broadbent*, 84 N.M. 469, 505 P.2d 64 (1973) stated: "It would be neither fair nor just to subject defendant to a judgment in personam on the basis that three payments were mailed into this state." Similarly, it would be neither fair nor just to subject defendants to *in personam* jurisdiction on the basis that statements for payment of services rendered in Texas were mailed to plaintiffs in New Mexico. Inasmuch as the minimum business contacts were insufficient to satisfy due process, the "transaction of any business" portion of our long-arm statute is not applicable.

Although the alleged tort may have been completed in New Mexico that, in itself, is insufficient. The minimum contact requirement must be met. *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958) states:

> The unilateral activity of those who claim some relationship with a non-resident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's ac-

tivity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

See *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Kulko v. Superior Court of California, Etc.*, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978); *Blount v. T D Publishing Corporation*, 77 N.M. 384, 423 P.2d 421 (1966).

The "activity" tests stated in the above quotation have been applied in cases of physicians, hospitals and medical treatment.

In *Wright v. Yackley*, 459 F.2d 287 (9th Cir. 1972) plaintiff, a resident of Idaho, sued a South Dakota physician, in Idaho, on the basis of prescriptions issued in South Dakota. The opinion states that the physician was "in the position of one who, in South Dakota, treats an Idaho resident with knowledge of her imminent return to Idaho and that his treatment thus may cause effects there." The opinion states:

> In the case of personal services focus must be on the place where the services are rendered, since this is the place of the receiver's (here the patient's) need. The need is personal and the services rendered are in response to the dimensions of that personal need. They are directed to no place but to the needy person herself. It is the very nature of such services that their consequences will be felt wherever the person may choose to go. However, the idea that tortious rendition of such services is a portable tort which can be deemed to have been committed wherever the consequences foreseeably were felt is wholly inconsistent with the public interest in having services of this sort generally available. * * * The scope of medical treatment should be defined by the patient's needs, as diagnosed by the doctor, rather than by geography.

This focus on the provision of medical services in the location where they are needed leads to the conclusion that the exercise of *in personam* jurisdiction in

this situation would be unreasonable * *

In *Gelineau v. New York University Hospital*, 375 F.Supp. 661 (D.N.J.1974) the plaintiff, a New Jersey resident, sued in New Jersey on the basis of treatment in a New York hospital. The opinion states:

> The case at bar does not involve a product which was deliberately or foreseeably shipped into the forum state's markets. It focuses on a service, not performed in the forum state but in a foreign state, rendered after the plaintiff voluntarily traveled to the foreign state so that he could benefit from that service which was available there only.

> When one seeks out services which are personal in nature, such as those rendered by attorneys, physicians, dentists, hospitals or accountants, and travels to the locality where he knows the services will actually be rendered, he must realize that the services are not directed to impact on any particular place, but are directed to the needy person himself. While it is true that the nature of such services is that if they are negligently done, their consequences will thereafter be felt whereever the client or patient may go, it would be fundamentally unfair to permit a suit in whatever distant jurisdiction the patient may carry the consequences of his treatment, or the client the consequences of the advice received.

> Unlike a case involving voluntary interstate or international economic activity * * * which is directed at the forum state's markets, the residence of a recipient of personal services rendered elsewhere is irrelevant and totally incidental to the benefits provided by the defendant at his own location. It is clear that when a client or a patient travels to receive professional services without having been solicited (which is prohibited by most professional codes of ethics), then the client, who originally traveled to seek services apparently not available at home, ought to expect that he will have to travel again if he thereafter complains that the services sought by him in the foreign

jurisdiction were therein rendered improperly.

Any other rule would seem to be not only fundamentally unfair, but would inflict upon the professions the obligation of traveling to defend suits brought in foreign jurisdictions, sometimes very distant jurisdictions, there brought solely because the patient or client upon his return to his own home decided to sue at home for services sought by himself abroad.

See also *Soares v. Roberts*, 417 F.Supp. 304 (D.R.I.1976); *Markham v. Gray*, 393 F.Supp. 163 (W.D.N.Y.1975); *Kailieha v. Hayes*, 536 P.2d 568 (Hawaii 1975).

Plaintiffs seek to have New Mexico exercise personal jurisdiction over defendants, who have never conducted activities within New Mexico, on the basis of plaintiffs' unilateral activity (Angelina's medical treatment) in Texas. Such would be neither fair nor just to the defendants. Inasmuch as the minimum contacts were insufficient to satisfy due process, "the commission of a tortious act" portion of our long-arm statute is not applicable.

The order of the trial court, holding there was a lack of personal jurisdiction over the defendants, is affirmed.

IT IS SO ORDERED.

LOPEZ and ANDREWS, JJ., concur.