Donald D. MARTIN, Willa H. Martin, Daniel E. Boyle, Jr., Patricia A. Boyle and Cynthia K. Norris, f/k/a Cynthia K. Boyle, Plaintiffs,

v.

FIRST INTERSTATE BANK OF CALIFORNIA, Bank Julius Baer & Co., Ltd., and Standard Chartered Bank, Defendants.

No. CIV 94–270 MV/DJS.

United States District Court,
D. New Mexico.

April 17, 1995.

Bill Chappell Jr., Montgomery & Andrews, P.A., Albuquerque, New Mexico, for plaintiffs.

John M. Kulikowski, William D. Slease, Keleher & McLeod, P.A., Albuquerque, New Mexico, for defendants.

1. In May, 1991, United New Mexico Bank merged into First Interstate Bank of Albuquerque and the merged entity became United New Mexi-co Bank of Albuquerque, later changed to United New Mexico Bank.

## MEMORANDUM OPINION AND ORDER

VAZQUEZ, District Judge.

**THIS MATTER** comes before the Court on Defendants, First Interstate Bank of California and Standard Chartered Bank's, Motion to Dismiss for Lack of Personal Jurisdiction, filed March 25, 1994. The Court has reviewed the briefs, the affidavits submitted therewith and the relevant law, and being fully advised finds the Defendants' Motion to dismiss is well taken and is **granted.**

### FACTUAL SUMMARY

The following facts are derived from the pleadings. This is an action for injunctive relief. The Plaintiffs seek to enjoin the defendant banks from disbursing funds under letters of credit issued by First Interstate Bank of California (FIBC). In 1990, the Plaintiffs invested in the Society and Council of Lloyd's, commonly known as Lloyd's of London (Lloyd's) and became "Names." Names are members of insurance syndicates which make up Lloyd's. Each syndicate assumes insurance risks and receives premium income. Profits from the syndicates were to be distributed to the Names, and the Names were to be liable for losses suffered by those syndicates of which they were members, pro rata, on the basis of each Name's underwriting limit.

As security on the investment, Plaintiffs were required to provide letters of credit, naming Lloyd's as the beneficiary. First Interstate Bank of Albuquerque (FIABQ), which is now United New Mexico Bank (United) [1] assisted the Plaintiffs in obtaining letters of credit from FIBC, because Lloyd's would not accept letters of credit from FIABQ. FIABQ handled initial transactions, conducted credit reviews and co-signed the Plaintiffs' applications for the letters of credit from FIBC.

FIBC is a federal bank, organized under California law, with its principal place of business in California. FIBC issued the letters of credit to Lloyd's, payable through its London office. Allegedly, certain rights or

obligations under the letters of credit were assigned or transferred to SCB. SCB is a bank duly organized and existing under the laws of England. SCB has its principal place of business in London, England and its principal office in the United States in New York, New York.

Plaintiffs seek to enjoin FIBC and SCB, if it has in fact been assigned any interests in the letters of credit, from disbursing on the letters of credit should a draw request be made by the named beneficiary, Lloyd's. Defendants FIBC and SCB contend that the Court lacks personal jurisdiction over them and moves to dismiss this action.

## DISCUSSION

■ This Court may exercise personal jurisdiction over the out-of-state defendants in this action, if the plaintiffs establish that the defendants are subject to jurisdiction under New Mexico's long-arm statute and sufficient minimum contacts exist so that the exercise of jurisdiction does not offend the due process clause of the fourteenth amendment. *See Beh v. Ostergard,* 657 F.Supp. 173 (D.N.M.1987) (*quoting International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

■ Specifically, New Mexico law provides for in personam jurisdiction over nonresident defendants, if the defendants have committed one of the acts enumerated in the long arm statute; the cause of action arises from those acts; and the defendants have sufficient minimum contacts with this state sufficient to satisfy the requirements of constitutional due process. *Beh,* 657 F.Supp. at 174; *Sanchez v. Church of Scientology of Orange County,* 115 N.M. 660, 857 P.2d 771, 773 (1993).

■ Plaintiffs bear the burden of proving facts that support the Court's exercise of jurisdiction. *See Doe v. National Medical Servs.,* 974 F.2d 143, 145 (10th Cir.1992). However, prior to trial, only a prima facie showing that personal jurisdiction exists need be made. *Behagen v. Amateur Basketball Ass'n.,* 744 F.2d 731, 733 (10th Cir.1984), *cert. denied,* 471 U.S. 1010, 105 S.Ct. 1879, 85 L.Ed.2d 171 (1985). In considering this preliminary jurisdictional showing, the allegations in the Plaintiffs' complaint are taken as true unless they are contradicted by affidavits. *Id.* If conflicting affidavits are presented, all factual disputes are resolved in the Plaintiffs' favor. *Id.*

### A. *New Mexico's Long Arm Statute.*

The New Mexico long arm statute sets out five different acts, which if performed in our state, submit the actor to the jurisdiction of our courts, if those acts give rise to the cause of action. NMSA 1978 § 38–1–16 (Michie 1987). Transacting business within the state is one of these acts. *Id.*[2] Plaintiffs allege that SCB and FIBC transacted business in this state and, therefore, are subject to this Court's jurisdiction under New Mexico's long arm statute.

### I. Standard Chartered Bank (SCB).

■ Plaintiffs allege SCB has "transacted business or undertaken other acts" in this state, subjecting it to this Court's jurisdiction. Plaintiff has failed to support this conclusory allegation with any factual basis or affidavits to support it.[3] Defendant SCB, on the other hand, submitted an affidavit by Michael Shields, an authorized representative of SCB, declaring that SCB is not authorized to transact business in New Mexico; has never maintained any office, agency, branch or facility of any type in this state; and did not commit acts in this state that are in any way related to the letters of credit at issue in this lawsuit. Shields acknowledged that SCB has interests in certain real estate located in New Mexico, but explained that it did

**2.** The statute provides in pertinent part:
Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts enumerated in this subsection thereby submits himself or his personal representative to the jurisdiction of the court of this state as to any cause of action arising from: (1) the transaction of any business within this state; . . .

**3.** Plaintiffs sought limited discovery on the issue of jurisdiction. By Order dated March 14, 1994, Magistrate Don Svet, denied additional discovery finding that Plaintiffs "had not stated any particularized need for discovery" and noting that the Plaintiffs had already been allowed to take a deposition on the matter.

not purposefully seek out these interests, but rather they were acquired indirectly through certain asset transfers between SCB and its subsidiaries. In any event, ownership of a real estate interest in this state, by itself, is not one of the enumerated acts in the long arm statute, and no connection has been alleged between any real estate interest and the instant cause of action.

Defendant SCB has contradicted the allegations pertaining to jurisdiction in Plaintiffs' complaint and Plaintiffs have not submitted any conflicting affidavits. Thus, Plaintiffs have failed to make even a threshold showing of a basis for personal jurisdiction over SCB. Therefore, Defendant SCB is dismissed from this lawsuit.

## II. First Interstate Bank of California (FIBC).

Plaintiffs assert in their pleadings and by affidavits of William Wood, Senior Vice President of United New Mexico Bank, and Brint R. Clay, Vice President of Sunwest Bank, formerly employed by FIABQ, that Defendant FIBC transacted business in this state related to its issuance of the letters of credit, in the following ways: (1) by entering into loan agreements (letters of credit) with New Mexico residents and a New Mexico bank; (2) by making phone calls and mailing documents to New Mexico residents; (3) by receiving an issuance fee and an annual renewal fee for the letters of credit; and (4) because Plaintiffs signed the applications for the letters of credit in New Mexico.

Defendant FIBC, on the other hand, submitted affidavits by David Grimes, Vice President of FIBC and James Cline, former officer of FIBC, which provide that FIBC does not maintain offices, agencies, branches or other facilities in New Mexico; has never sought or obtained a certificate of authority to do business in New Mexico; did not issue the letters of credit in New Mexico, nor authorize the letters of credit to be drawn upon in this state and at no time sent representatives to New Mexico to negotiate with Plaintiffs regarding the letters of credit.

Plaintiffs also allege that FIBC committed a number of other acts in New Mexico subjecting them to this Court's jurisdiction.[4] However, those acts which are not enumerated in the long arm statute or which have no relation to the instant cause of action were not considered by this Court in its analysis. *See Beh,* 657 F.Supp. at 175 n. 1. While many of these "other acts" might help establish that FIBC transacted business in this state in general, Plaintiffs failed to establish any nexus between those acts and the underlying cause of action as required under the long arm statute (§ 38–1–16(C)).

New Mexico has interpreted the long arm statute as extending personal jurisdiction as far as constitutionally permissible. *United Nuclear Corp. v. General Atomic Co.,* 91 N.M. 41, 570 P.2d 305, 306 (1977). Thus, it is not necessary to determine whether the Defendants transacted business within New Mexico in any technical sense. *See Federal Deposit Insurance Corp. v. Hiatt,* 117 N.M. 461, 872 P.2d 879, 881 (1994). In *Hiatt,* the court stated:

> When the state courts have construed the state long-arm statute as being coextensive with the requirements of due process, "the usual two-step analysis collapses into a single search for the outer limits of what due process permits."

Defendant FIBC's affidavit of James Cline, who was in charge of FIBC's correspondent banking relationship with FIABQ, explained that these other contacts arose out of FIBC's correspondent relationship and stated that as a correspondent representative for FIBC he came to New Mexico a few times a year to take care of corresponding matters, but never solicited or conducted business with respect to the letters of credit in this state and did not know of any efforts by FIBC to seek out or solicit the letters of credit.

---

**4.** These other acts which Plaintiffs allege subject FIBC to long arm jurisdiction are as follows: FIBC solicited "additional business" in New Mexico; operated a credit card issuing business; maintained a correspondent account at FIABQ; FIBC's customers could cash checks and use ATM cards at FIABQ; FIBC received participation interests in loans originated by FIABQ; FIBC sent representatives to FIABQ on a regular basis for the purpose of resolving any correspondent banking problems and handling clearing questions; and Plaintiffs submitted an affidavit of Douglas Stuart which establishes that FIBC has interests in real estate in New Mexico.

*Id.* (*quoting Forsythe v. Overmyer,* 576 F.2d 779, 782 (9th Cir.) *cert. denied,* 439 U.S. 864, 99 S.Ct. 188, 58 L.Ed.2d 174 (1978)).

### B. *Constitutional test for personal jurisdiction: Due process.*

■ The general constitutional test for personal jurisdiction is well-established. A federal court sitting in diversity "may exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum state." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980) (*quoting International Shoe,* 326 U.S. at 316, 66 S.Ct. at 158); *See also Customwood Mfg., Inc. v. Downey Const. Co.,* 102 N.M. 56, 691 P.2d 57, 58 (1984) (a critical factor in determining whether these "minimum contacts" are established is the degree to which the defendant purposely initiates its activity with the state). Due process requires that business transactions be conducted at such a level that defendants could "reasonably anticipate being haled into court" here. *World–Wide Volkswagen* at 297, 100 S.Ct. at 567.

■ Defendant FIBC's contacts with the forum state must also be such that maintenance of the suit "does not offend traditional notions of fair play and substantial justice." *International Shoe,* 326 U.S. at 316, 66 S.Ct. at 158. Before personal jurisdiction can be exercised, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). This purposeful availment test is the "key focus" in analyzing minimum contacts questions. *State Farm Mutual Ins.*

*Co. v. Conyers,* 109 N.M. 243, 784 P.2d 986, 988 (1989).

■ Therefore, this Court's inquiry will focus on whether FIBC's issuance of letters of credit to Plaintiffs, amounts to a purposeful decision by FIBC to participate in the local economy and to avail itself of the benefits and protection of New Mexico law. *See Hiatt,* 872 P.2d at 882. An example of purposeful availment is where the defendant's contacts can be attributed to his own actions rather than to the actions of the Plaintiff. *Rambo v. American Southern Ins. Co.,* 839 F.2d 1415, 1420 (10th Cir.1988). Purposeful availment requires some affirmative conduct by the defendant which promotes the transaction of business within the forum state. *Id.* This conduct must be related to the underlying cause of action.[5] *See* NMSA 1978 (Michie 1987); *Beh,* 657 F.Supp. 173; § 38–1–16(C); *Conyers,* 784 P.2d at 987.

Plaintiffs have made no allegation that Defendant FIBC initiated contact or in any way solicited their business with respect to the letters of credit.[6] In fact, Plaintiffs acknowledge in the pleadings that with the assistance of FIABQ, they approached FDIC to obtain letters of credit because Lloyd's would not accept letters of credit from FIABQ. FIBC's affidavits of Cline and Grimes state that FIBC never sent a representative to New Mexico to meet with Plaintiffs regarding the letters of credit or sought out or solicited the letters of credit. The record makes it clear that it was Plaintiffs, not Defendant FIBC who initiated the transaction at issue in this case.

Defendant FIBC's subsequent telephone calls and correspondence to New Mexico regarding the letters of credit were in response to the Plaintiffs' request that FIBC issue

---

5. In their brief, plaintiffs acknowledge that in order establish personal jurisdiction over the defendants they must show (1) defendants committed of one of the enumerated acts in the New Mexico Long Arm Statute; (2) the cause of action arises out of the enumerated act and (3) the defendants have had minimum contacts with the state sufficient to satisfy due process. Interestingly, plaintiffs go on to discuss how the first and third factors have been met, skipping over the second requirement and not addressing how the

FIBC's alleged contacts with this state are related to the instant cause of action.

6. As discussed above, Plaintiffs assert generally in their response brief and in the affidavit of William Wood, Senior Vice President of United New Mexico Bank, that Defendants solicited business in New Mexico. However, Plaintiffs have not alleged that any solicitation was done by FIBC with respect to the letters of credit at issue in this case.

them letters of credit, and did not arise out of affirmative action on the part of FIBC. In any event, use of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the forum state. *Sanchez*, 857 P.2d at 775 (*quoting, Peterson v. Kennedy*, 771 F.2d 1244, 1262 (9th Cir.1985)); *Wesley v. H & D Wireless Ltd. Partnership*, 678 F.Supp. 1540, 1542 (D.N.M.1987). Moreover, the fact that Plaintiffs signed the applications for the letters of credit in New Mexico is unilateral and is not a basis to confer personal jurisdiction over FIBC. *See Hanson*, 357 U.S. at 253, 78 S.Ct. at 1239 (unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State).

Defendant FIBC's applicable contacts with this state were simply a response to Plaintiffs' efforts to obtain letters of credit as security for their investment with Lloyd's, rather than affirmative action to do business in New Mexico. FIBC does not have sufficient minimum contacts to establish personal jurisdiction under the long arm statute and it would offend traditional notions of fair play and substantial justice to require it to defend this lawsuit in New Mexico.

The Court notes that Defendants FIBC and SCB, also filed a Motion to Dismiss for Failure to Join Indispensable Party, on April 3, 1994. The Court does not need to reach the issues raised in that motion, given the dispositive nature of the ruling set forth in this opinion. Therefore, that motion is deemed moot.